UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**JOELSON DUMAS**                         CASE NO. 2:24-CV-00911

**VERSUS**                                JUDGE JAMES D. CAIN, JR.

**TRANSFINANCIAL COMPANIES L L C**        MAGISTRATE JUDGE LEBLANC

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 12] filed by defendant Transfinancial Companies LLC ("Transfinancial"). Plaintiff opposes the motion. Doc. 17.

## I.
### BACKGROUND

This suit arises from debt collection efforts by Transfinancial on two accounts placed for collection recovery against plaintiff Dumas. The first, Transfinancial Account 1216983954, was placed by Lake Charles Memorial Hospital ("LCMH") for $2,009.15 and the second, Transfinancial Account 1216962104, was placed by Professional Emergency Medicine ("PEM"), for $2,129.00. Doc. 12, att. 8, ¶ 3. Dumas alleges that he became aware of these debts on May 21, 2024, when reviewing his credit report. Doc. 1, ¶ 6. He sent correspondence to Transfinancial by certified on that date, stating: "I refuse to pay $2129 and $2009 owed to Lake Charles Memorial Hospital don't contact me about this debt." *Id.* at ¶ 7; *see* doc. 12, att. 3. Transfinancial received the letter on May 24, 2024. Doc. 1, ¶ 8; doc. 12, att. 4. On May 29, the Transfinancial Dispute Department reviewed the letter, identified the respective accounts, and coded them as "DNC," which served to

prevent Transfinancial's collectors and collections systems from contacting Dumas absent further communication from Dumas requesting communication. Doc. 12, att. 8, ¶¶ 3–4.

On June 4, 2024, Transfinancial received two letters ("the Dispute Letters"), both dated May 18, 2024, and postmarked May 21, 2024. The Dispute Letters stated that Dumas was disputing the reporting of both the LCMH and PEM accounts on his credit reports and requested that Transfinancial "investigate and delete/correct the information in your systems and the [credit reporting agencies] as soon as possible." Doc. 12, att. 5, pp. 1–2. In response Transfinancial sent letters ("Verification Letters") to Dumas on June 7 and June 24, 2024, stating that it had completed its investigations of the respective accounts, verified the debts, and would continue collection efforts. Doc. 12, atts. 6 & 7. In both letters, Transfinancial also stated that the correspondence was sent "solely for the purpose of responding to your dispute" and that "[i]f you have requested that Transfinancial stop contacting you, this will be the final communication that you receive from Transfinancial unless you send Transfinancial subsequent communication that requires a response." *Id.*

Dumas filed suit in this court on July 9, 2024, alleging that Transfinancial's Verification Letters violated Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Doc. 1. Transfinancial now moves for summary judgment, with opposition from Dumas. Docs. 12, 17.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors," 15 U.S.C. § 1692(e), and "should . . . be construed broadly and in favor of the

consumer" to effectuate its remedial scope. *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 511 (5th Cir. 2016) (internal quotations and citations omitted). "A single violation of any provision of the Act is sufficient to establish civil liability under the FDCPA." *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 (5th Cir. 1997). To state a claim under the FDCPA, a plaintiff must show (1) that he was the object of debt collection activity arising from a consumer debt; (2) that the defendant is a debt collector as defined under the FDCPA, and (3) that the defendant engaged in conduct prohibited by the FDCPA. *Douglas v. Select Portfolio Svcg., Inc.*, 2015 WL 1064623, at *4 (S.D. Tex. Mar. 11, 2015).

Transfinancial does not dispute the first two elements, which are supported by the record. As for the third, Dumas alleges that Transfinancial violated the FDCPA's restrictions on communications under 15 U.S.C. § 1692c(c).[1] That section provides:

> (c) Ceasing communication
> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt except—
>> (1) to advise the consumer that the debt collector's further efforts are being terminated;
>> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
>> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.
>
> If such notice from the consumer is made by mail, notification shall be complete upon receipt.

---

[1] In his opposition, plaintiff expands his allegations to argue that the verification letters exceeded the scope permitted under § 1692g(b) because Transfinancial advised therein that it was resuming debt collection activities. This claim is not properly before the court. But even if plaintiff were granted leave to amend, the court finds no issue with the statements.

15 U.S.C. § 1692c(c). Under § 1692g(b), however, if a consumer disputes a debt in writing then the debt collector must cease collection until it has verified the debt with the creditor and forwarded that verification to the alleged debtor. 15 U.S.C. § 1692g(b). While the statute does not expressly require a verification letter, it does prohibit further action on the debt without this communication. Restrictions on communications under § 1692c(c) must be read to avoid "anomalies" within the FDCPA. *Heintz v. Jenkins*, 514 U.S. 291, 296 (1995). Courts have therefore held that verification letters do not violate the FDCPA even when a consumer has already sent notice to cease communication under § 1692c(c). *Marino v. Hoganwillig, PLLC*, 910 F.Supp.2d 492, 495–96 (W.D.N.Y. Apr. 24, 2012); *see also Recker v. Cent. Collection Bureau, Inc.*, 2005 WL 2654222, at *4 (S.D. Ind. Oct. 17, 2005) ("Because verification is a statutorily required activity in order to resume debt collection activities, verification activities could be communications allowed implicitly under exception 1692c(c)(3)."); *Hall v. Cohn, Goldberg & Deutsch, LLC*, 2025 WL 475275, at *4 (D. Md. Feb. 12, 2025) (collecting cases). This appears to be one such case. While Dumas requested that Transfinancial cease communications, he subsequently requested verification of the debts—requiring further communication from Transfinancial before it could resume any collection activity on the accounts. He thus invited the answer and waived any claim that a response his requests would violate his directive to cease communications. Because Transfinancial's responses were limited to this verification, it did not exceed the scope of the waiver. *See Crumel v. Kross, Lieberman & Stone, Inc.*, 2015 WL 1565432, at *5 (E.D.N.C. Apr. 8, 2015) (citing *Mammen v. Bronson & Migliaccio, LLP*, 715 F.Supp.2d 1210, 1217 (M.D. Fla. 2009)) (request for verification of

debt waived "cease communication" directive, but only with respect to the verification information). Accordingly, the court can find no violation of the FDCPA.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 12] will be **GRANTED** and all claims in this matter will be **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Chambers on the 21st day of July, 2025.

JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**